**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| EUGENE RICE, | : | |
| Petitioner | : | No. 1:14-cr-00070-11 |
| | : | |
| v. | : | (Judge Kane) |
| | : | |
| UNITED STATES OF AMERICA, | : | |
| Respondent | : | |

**MEMORANDUM**

Before the Court is Petitioner Eugene Rice ("Petitioner")'s motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 ("§ 2255 motion"). (Doc. No. 1758.) For the following reasons, the Court will deny Petitioner's § 2255 motion.

**I.    BACKGROUND**

In 2014, a federal grand jury returned a superseding indictment charging Petitioner and twenty (20) codefendants (collectively, "Codefendants," and with Petitioner, "Defendants") with racketeering conspiracy, 18 U.S.C. § 1962 ("RICO") (Count I), conspiracy to distribute a controlled substance, 21 U.S.C. 846 (Count II), and distribution of a controlled substance (Count III), 21 U.S.C. § 841(a). (Doc. No. 78.) Four Defendants were additionally charged with firearm-related offenses, including, possession of a firearm in furtherance of a drug-trafficking crime (Count V) and conspiracy of the same (Count VI). (Id.)

The charges stemmed from Defendants' association with a violent street gang—the Southside gang, an affiliate of the Bloods, a national street gang—to perpetrate drug trafficking and other violent acts. (Id.) The conspiracy took place over a twelve-year period and involved deadly gang violence. (Id.) Nine (9) defendants entered pleas of guilty. (Doc. Nos. 1380, 1493, 1542, 1550–51, 1560, 1575, 1585.) Twelve (12), including Petitioner, proceeded to a joint jury trial. (Doc. Nos. 974–1027.) The jury found all twelve guilty, in late 2015, of one or more

charges.  (Doc. Nos. 911–34.)  As to Petitioner, the jury found him guilty of conspiracy to distribute and possess with intent to distribute 5 kilograms or more of cocaine and 280 grams and more of crack cocaine, heroin, and marijuana (Counts II) and possession with intent to distribute 5 kilograms or more of cocaine and 280 grams and more of crack cocaine, heroin, and marijuana (Count III).  (Doc. No. 925.)  Petitioner was found not guilty of RICO conspiracy (Count I).  (Id.)

Petitioner's presentence investigation report ("PSR") assigned him a combined adjusted offense level of 36 and a criminal history category of V, determining that Petitioner's guideline range was 292 to 365 months' imprisonment.  (PSR ¶¶ 213, 229, 254.)  As to statutory sentencing ranges, the PSR concluded that Petitioner faced a maximum term of life imprisonment and a mandatory minimum of ten (10) years.  (PSR ¶ 253.)  Prior to sentencing, Petitioner filed a sentencing memorandum and motion for downward departure/variance, which included objections to the PSR.  (Doc. No. 1257.)  The parties briefed the motion.  (Doc. Nos. 1301, 1321, 1353.)  On December 8, 2017, the Court sentenced Petitioner to two hundred (200) months' imprisonment on each Count to be served concurrently.  (Doc. No. 1362 at 3.)  The Court departed below the guideline range because Petitioner "completed terms of imprisonment" for state court conduct that was outlined in the PSR.  (Doc. No. 1365 at 2–3.)  The Court considered the 18 U.S.C. § 3553(a) factors, finding that Petitioner's pre-sentence rehabilitation weighed in favor of a downward variance based on Petitioner's motion for downward departure/variance.  (Id. at 3.)

Petitioner and nine Codefendants who proceeded to trial appealed their convictions and sentences to the United States Court of Appeals for the Third Circuit ("Third Circuit").  See United States v. Williams, 974 F.3d 320, 338 (3d Cir. 2020).  The Third Circuit grouped their

claims on appeal into five (5) categories: (1) Sixth Amendment challenges to this Court's closure of the courtroom to the public during voir dire; (2) challenges to the Court's in camera disposition of a challenge asserted under Batson v. Kentucky, 476 U.S. 79 (1986); (3) evidentiary challenges relating to motions to suppress evidence recovered from their residences under search warrants; (4) challenges to the sufficiency of evidence at trial; and (5) challenges to their sentences based on alleged procedural defects.  See id. at 335–36.  Petitioner challenged the Court's two-day closure of the courtroom to the public during jury selection, which was based on courtroom capacity limitations.  See Williams, 974 F.3d at 340–49.  Because none of the numerous defense attorneys involved in these criminal proceedings objected to the courtroom closure, the Third Circuit reviewed for plain error under the framework of United States v. Olano, 507 U.S. 725, 732 (1993).[1]  Noting the Government's concession that the Court's order closing the courtroom was an "error" that was "plain," the Third Circuit found it unnecessary to address the third Olano prong (whether an error affects substantial rights) because, as to the fourth Olano prong, the error of closing the courtroom to all but court personnel, Defendants, trial counsel and support staff, and prospective jurors "did not 'seriously affect the fairness, integrity or public reputation of judicial proceedings . . . .'"  See Williams, 974 F.3d at 341 (quoting Olano, 507 U.S. at 736).

While affirming all ten Defendants' judgments of conviction, and based on the Government's concession, the Third Circuit partially vacated the judgments of sentence of eight

---

[1]  In Olano, "the Supreme Court [] described a four-part inquiry for plain-error review.  There must: (1) be an 'error' that (2) is 'plain' and (3) 'affects substantial rights.'"  See Williams, 974 F.3d 320, 340 (3d Cir. 2020) (quoting Olano, 507 U.S. at 732 (quoting Fed. R. Crim. P. 52(b))).  "If these three conditions are satisfied, then it is within the sound discretion of the court of appeals to correct the forfeited error—but only if (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings."  Id. (quoting Olano, 507 U.S. at 732) (internal quotation marks omitted).

Defendants "as to the assessment of police overtime costs," vacated the judgment of sentence of one of those eight Defendants—Hernandez—in full to permit him an opportunity to make a statement or present mitigation evidence in connection with his sentencing proceedings, and vacated another of the same group of Defendants—Scheug—as to the assessment of restitution, fines, and costs.  See id. at 375, 377, 380; see also (Doc. Nos. 1637, 1637-1, 1638, 1638-1, 1639, 1639-1, 1640, 1640-1, 1641, 1641-1, 1642, 1642-1, 1643, 1643-1, 1644, 1644-1, 1645, 1645-1, 1646, 1646-1).

On November 24, 2020, the Third Circuit denied Petitioner's petition for rehearing en banc and subsequently issued its mandate on December 2, 2020.  Petitioner and his Codefendants filed a petition for writ of certiorari, which was denied by the Supreme Court of the United States.  See Rolando Cruz, Jr. v. United States, 142 S.Ct. 309 (2021).

On October 4, 2022, Petitioner, with the assistance of counsel, filed his motion to vacate under 28 U.S.C. § 2255.  (Doc. No. 1758.)  On November 9, 2022, the Government filed a brief in opposition with supporting exhibits.  (Doc. Nos. 1797–98.)  Petitioner did not file a reply brief.  Having been fully briefed, Petitioner's § 2255 motion is ripe for disposition.

## II.    LEGAL STANDARD

Under 28 U.S.C. § 2255(a), a federal prisoner may file a motion requesting that the sentencing court vacate, set aside, or correct his sentence on the basis "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the [C]ourt was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  See 28 U.S.C. § 2255(a).  However, § 2255 does not afford a remedy for all errors that may have been made at trial or during sentencing.  See United States v. Essig, 10 F.3d 968, 977 n.25 (3d Cir. 1993) (citing

4

United States v. Addonizio, 442 U.S. 178, 185 (1979)).  Rather, § 2255 is implicated only when the alleged error raises "a fundamental defect which inherently results in a complete miscarriage of justice."  See Addonizio, 442 U.S. at 185.  Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a petitioner has one year from the time his conviction becomes final to file a § 2255 motion.  See 28 U.S.C. § 2244.

## III.    DISCUSSION

Petitioner advances the following six grounds in support of his § 2255 motion:

(1)    "Trial counsel rendered ineffective assistance by failing to object to the written order of the district court to sua sponte close the courtroom to the press and public during voir dire";

(2)    "Trial counsel rendered ineffective assistance by failing to discuss, investigate and call character witnesses at trial and/or otherwise request a proper character evidence jury instruction";

(3)    "Trial counsel was ineffective for failing to file a motion for severance for a separate trial from his 10 [C]odefendants";

(4)    "Trial counsel rendered ineffective assistance by providing [Petitioner] an unreasonable prognosis about his chances of winning at trial that led to the rejection of and non-pursuit of any non-trial disposition";

(5)    "Trial counsel rendered ineffective assistance by failing to adequately advise [Petitioner] of his true sentencing exposure which resulted in him rejecting a plea agreement"; and

(6)    "[Trial] counsel for movant failed to correct the district court's calculation of credit for time served during prior periods of incarceration for relevant conduct."

(Doc. No. 1758 at 3–6.)

As his claims reflect, Petitioner seeks § 2255 relief based on the overarching assertion that Trial Counsel provided constitutionally deficient representation in violation of the Sixth Amendment.  A collateral attack of a sentence based upon a claim of ineffective assistance of counsel must meet a two-part test established by the Supreme Court in Strickland v. Washington,

466 U.S. 668, 687–88, 694 (1984).  See George v. Sively, 254 F.3d 438, 443 (3d Cir. 2001).  The first Strickland prong requires Petitioner to "establish first that counsel's performance was deficient."  See Jermyn v. Horn, 266 F.3d 257, 282 (3d Cir. 2001).  Petitioner must show that counsel made errors "so serious" that counsel was not functioning as guaranteed under the Sixth Amendment.  See id.  To do so, Petitioner must demonstrate that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms.  See id. (citing Strickland, 466 U.S. at 688).  There is, however, "a 'strong presumption' that counsel's performance was reasonable."  See id.

Under the second Strickland prong, Petitioner "must demonstrate that he was prejudiced by counsel's errors."  See id.  Prejudice in this context means "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  See id. (quoting Strickland, 466 U.S. at 694).  Reasonable probability is defined as "a probability sufficient to undermine confidence in the outcome."  See id. (quoting Strickland, 466 U.S. at 694).

Notably, Petitioner must make an adequate showing with respect to both prongs of the Strickland test in order to be entitled to relief.  See Strickland, 466 U.S. at 686.  A failure to make the required showing on either prong precludes a finding in Petitioner's favor.  See id. at 700.  "Because failure to satisfy either prong defeats an ineffective assistance claim, and because it is preferable to avoid passing judgment on counsel's performance when possible," courts should address the prejudice prong first when it is dispositive of a petitioner's claims.  See United States v. Cross, 308 F.3d 308, 315 (3d Cir. 2002).  The Court addresses each ground asserted in Petitioner's motion in turn below.

A.        **Ground One: Failure to Object to Two-Day Courtroom Closure**

Ground One of Petitioner's motion asserts that Trial Counsel was constitutionally deficient for failing to object to the Court's decision to close the courtroom to the public for two days during voir dire.  (Doc. No. 1758 at 3.)  In this regard, the "Sixth Amendment requires that '[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial.'" See United States v. Gallman, 57 F.4th 122, 126 (3d Cir. 2023) (alteration in original) (quoting U.S. Const. amend. VI).  Invoking this Sixth Amendment right, Petitioner argues that:

> [t]he Evidence is clear that trial counsel did not object to the closure of the Courtroom during Voir Dire and that the closure was not for some insignificant or trivial time.  None of the factors were placed on the record due to counsel's failure to object.  And members of the public on behalf of the Mr. Rice were at the trial and desired to remain in the Courtroom during the Voir Dire but were not allowed to observe.

(Id.) (citing Presley v. Georgia, 558 U.S. 209, 214 (2010), where the Court reiterated that "the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure" (quoting Waller v. Georgia, 467 U.S. 39, 48 (1984))).

Conceding the first Strickland prong, the Government notes that for Petitioner to be successful, Petitioner must also establish prejudice under the second Strickland prong.  (Doc. No. 1797 at 10–15.)  The Government observes that while erroneously closing a courtroom to the public is a "structural error" that may give warrant a presumption of prejudice, "[o]n habeas, not all structural errors require automatic reversal," see Barney v. Adm'r of N.J. State Prisons, 48 F.4th 162, 165 (3d Cir. 2022), and "closing voir dire is not akin to closing the part of trial where the evidence is being adduced, and thus prejudice [i]s not presumed" when counsel fails to object to the closure, see (Doc. No. 1797 at 12–14); Baxter v. Superintendent Coal Twp. SCI, 998 F.3d

542, 548 (3d Cir. 2021) (citing <u>Weaver v. Massachusetts</u>, 582 U.S. 286, 294 (2017)).[2]

Accordingly, the Government argues that Petitioner's failure to establish prejudice from Trial

Counsel's failure to object to the Court's decision compels the Court to deny this courtroom-

closure-related claim.  (<u>Id.</u> at 15.)

The Court has thoroughly reviewed the record and the parties' arguments and concludes

that Petitioner has failed to satisfy the second <u>Strickland</u> prong.  The Court notes at the outset

that controlling case law dictates that "closing voir dire" to the public does not automatically

give rise to a presumption of prejudice under the relevant case law.  <u>See</u> <u>Weaver</u>, 582 U.S. at

294; <u>Barney</u>, 48 F.4th at 165; <u>Baxter</u>, 998 F.3d at 548.  Therefore, the issue of whether Petitioner

has established prejudice turns on the circumstances under which the closure occurred.

Applying various factors identified by the Supreme Court and Third Circuit bearing on

the issue of whether and the extent to which a courtroom closure causes prejudice, the Court

finds that the circumstances here do not establish prejudice for purposes of <u>Strickland</u>'s second

prong.  In this case, as in <u>Weaver</u>, while "[i]t is . . . possible that potential jurors might have

behaved differently if [the individuals who were prevented from viewing the trial] had been

present" and that "the presence of the public might have had some bearing on juror reaction,"

Petitioner "offer[s] no evidence or legal argument establishing prejudice in the sense of a

reasonable probability of a different outcome but for counsel's failure to object."  <u>See</u> <u>Weaver</u>,

582 U.S. at 303 (internal quotation marks omitted).  As the Third Circuit noted on appeal,

"although the closure encompassed all of the jury-selection phase, those proceedings lasted only

---

[2] "[T]he . . . doctrines [of structural error and ineffective assistance of counsel] are intertwined;
for the reasons an error is deemed structural may influence the proper standard used to evaluate
an ineffective-assistance claim premised on the failure to object to that error."  <u>See</u> <u>Baxter</u>, 998
F.3d at 547 (alteration in original) (quoting <u>Weaver</u>, 582 U.S. at 294).

two days; the public had access to all other phases of the trial, which in total lasted longer than seven weeks." See Williams, 974 F.3d at 346. Further, "a transcript of the proceedings was produced and later disclosed," and "knowledge both of the media's attention to the trial and of the transcript's production (which ensures publicity in perpetuity) may have had a similar effect on the proceedings' participants as real-time public access would have had, keeping them 'keenly alive to a sense of their responsibility and to the importance of their functions.'" See id. at 346–47 (quoting Waller, 467 U.S. at 46). "In addition, although the general public was not, absent authorization, able to be present at jury selection, as in Weaver, 'there were many members of the venire who did not become jurors but who did observe the proceedings.'" Id. at 347 (quoting Weaver, 582 U.S. at 304). There has "been 'no suggestion of misbehavior by the prosecutor, judge, or any other party; and no suggestion that any of the participants failed to approach their duties with the neutrality and serious purpose that our system demands.'" See id. (quoting Weaver, 582 U.S. at 304).

The Court also finds persuasive the Government's arguments on the issue of prejudice. In its briefing, the Government argues as follows:

> [Petitioner] simply cannot establish prejudice. While a public trial can benefit the accused to the extent that "the presence of interested spectators may keep the defendant's trier keenly alive to a sense of their responsibility and to the importance of their functions," Williams, 974 F.3d at 346 (quoting Waller, 467 [U.S.] at 46), here the public was excluded for two[]days of jury selection in a seven-week trial. The potential for prejudice is confined to the jury selection. The transcriptions of the jury selection were public. There is no indication that any juror falsified information or would have otherwise been exposed as unqualified to serve if the proceedings had been public. Nor is there evidence that the judge, prosecutors, or other court personnel engaged in misconduct during jury selection which would have been minimized or thwarted by a public proceeding.
>
> Additionally, there were at least twenty-five people in the defense camps who watched the jury selection process. This is a far cry from the normal public presence at jury selection. Due to the size of the venire panel and the number of defendants, the courtroom was packed with people. So, although the venire

members do not qualify as the "public" for Sixth Amendment purposes, the distinction between members of the public and fellow venire members was probably lost on the individuals as they proceeded through jury selection.  The combination of people in the packed courtroom, plus their oath and admonition that all they say was being stenographically recorded, placed sufficient social and legal pressure on each juror to answer honestly that the court should have confidence that allowing some members of the public to watch the proceedings would have changed nothing.  This dynamic was only amplified by the twenty-five plus members of the defense camps who were present and scrutinizing the venire members.  Any suggestion that a more public spotlight on jury selection would have resulted in a different jury is pure speculation.  There is nothing to suggest that a different jury would have resolved this case differently.  As a result, the claim is without merit.

(Doc. No. 1797 at 14–15.)

For these reasons—and based on the authorities and the Third Circuit's prior discussion of the circumstances of the courtroom closure—the Court concludes that Petitioner has not established that Trial Counsel's failure to object to the two-day courtroom closure during voir dire prejudiced him.  Petitioner advances no argument that, but for Trial Counsel's failure to object to the Closure Order, "the result of [his criminal] proceeding would have been different."  See Strickland, 466 U.S. at 694.  He asserts that Trial Counsel's failure to object deprived the Court of an opportunity to make a record supporting the courtroom closure and that "members of the public on behalf of [Petitioner] were at the trial and desired to remain in the [c]ourtroom during the [v]oir [d]ire but were not allowed to observe."  (Doc. No. 1758 at 3.)  These allegations, when viewed under the standard and case law discussed above, do not establish Strickland prejudice resulting from the failure to object to the courtroom closure under the circumstances of this case, and the record is otherwise bereft of any indications of prejudice.[3]

---

[3]  The Court in Weaver (and the Third Circuit in Baxter) assumed, without deciding, that prejudice from a structural error can be established by a showing of "fundamental unfairness."  See Weaver, 582 U.S. at 301 ("[T]he burden is on the defendant to show either a reasonable probability of a different outcome in his or her case or, as the Court has assumed for these purposes, to show that the particular public-trial violation was so serious as to render his or her

The Court will therefore deny Petitioner's first claim for § 2255 relief.

### B.    Ground Two: Failure to Call Character Witnesses and/or Request a Character Evidence Jury Instruction

Petitioner's second ground for § 2255 relief is based on Trial Counsel's alleged failure to investigate potential character witnesses at trial and/or request a proper character evidence jury instruction.  (Doc. No. 1758 at 4.)  In this regard, Petitioner argues as follows:

> Although character witnesses are usually not crucial to a criminal matter, in the present case, with so many Defendants, Trial Counsel should have investigated whether character testimony could have distinguished [Petitioner] from the multitude of other Defendants.  And, as in this case, where distinguishing [Petitioner] from the other Defendants was part of the trial strategy, it is puzzling that Trial Counsel would choose to not investigate witnesses.  Indeed, there were a host of other witnesses, including family, and friends that existed and were ready, willing and able to testify on [Petitioner]'s behalf at trial.  A thorough investigation would have revealed these witnesses.
>
> Trial counsel never discussed with [Petitioner] his right to call character witnesses on his behalf at trial.  As outlined above, there were character witnesses who were available and willing to testify at trial to [Petitioner]'s good character.  Thus, there was no reasonable basis for counsel's failure to interview and prepare potential character witnesses.  At the evidentiary hearing, [Petitioner] would offer the testimony of several character witnesses who would testify that [he] had a good reputation in the community for being a truthful and law-abiding person.  Despite their existence, these individuals were never contacted by trial counsel to testify at trial. In those cases where proving credibility may be key, such as this case, presenting character evidence has been held to be essential.  Credibility of witnesses was a dispositive factor in this case and critical to the jury's determination of credibility.  Despite that, no character witnesses were ever called and [Petitioner] did not testify.  In absence of that testimony, the need for character evidence was even more vital.  Finally, at no time was a character evidence jury instruction requested by trial counsel.  That instruction was crucial as the jury would have been instructed that such character evidence constituted substantive evidence that can raise a reasonable doubt as to [Petitioner]'s guilt.

---

trial fundamentally unfair." (emphasis added)); see also Baxter, 998 F.3d at 548 (assuming "that prejudice can be shown by a demonstration of fundamental unfairness" (quoting Weaver, 582 U.S. at 304)).  But "not every public-trial violation will in fact lead to a fundamentally unfair trial," see Weaver, 582 U.S. at 298, and a two-day courtroom closure during voir dire, absent any additional circumstances suggesting fundamental unfairness, does not, in the Court's view, satisfy the prejudice prong of Strickland here.

(Id.)  Petitioner argues that Trial Counsel's "failure to properly raise and litigate these issues at trial constitutes prejudicially deficient performance that requires a new trial."  (Id.)

The Government, in response, notes that Petitioner "has not identified who the[] [supposed] character witnesses are and their basis of knowledge to render such opinions."  (Doc. No. 1797 at 15–16.)  Additionally, citing Petitioner's substantial criminal history, the Government observes that "[o]ffering character witnesses 'would have enabled the prosecution to ask about specific instances of noncriminal misconduct.'"  (Id. at 16–17) (quoting Alexander v. Shannon, 163 F. App'x 167, 175 (3d Cir. 2006) (unpublished)).  The Government notes that Trial Counsel called Petitioner's wife as a witness, and she testified—by way of background and not character evidence—to Petitioner's "good character for the jury, including [his] marriage, his work history, his financial stability, etc."  See (id. at 17) (citing Doc. No. 1002 at 245, Tr. 5670:13–25); see also (Doc. No. 1002 at 253, Tr. 5678:18–19 (testifying that, e.g., Petitioner "is a good father")).  The Government observes, however, that the Court sustained an objection to the Government's attempt, on cross-examination, to elicit from Petitioner's wife testimony about Petitioner's criminal associations, which the Court concluded was beyond the scope of direct examination.  See (id. at 18) (citing Doc. No. 1002 at 260–61, Tr. 5685:2–5686:11).  The Government maintains that if Trial Counsel elicited testimony from Petitioner's wife (or any other purported character witness) about his honesty or law abiding nature, the Government would have had more "leeway in exploring the witnesses' knowledge of [Petitioner]'s background and associations, including but not limited to his affiliation with the Southside gang."  (Id.)  Finally, the Government submits that Petitioner cannot establish prejudice because "drug trafficking is a secretive business, often done outside of the notice of family, friends, and people in the community" such that character witnesses would shed little light on the issue at

hand, whether he participated in drug trafficking.  (Id. at 18–19.)

Upon careful consideration of Petitioner's claims, the parties' briefing, the record, and relevant authority, the Court concludes that Petitioner has failed to establish Strickland prejudice and Ground Two of his § 2255 motion is unavailing for that reason alone.  The Court need not address the first Strickland prong as to Trial Counsel's performance.  See Gaines v. Superintendent Benner Twp. SCI, 33 F.4th 705, 712 (3d Cir. 2022) (noting that if a § 2255 movant "makes an inadequate showing as to one of the[] [Strickland prongs], then [courts] do not need to examine the other").  To satisfy the prejudice prong of Strickland for an alleged failure to investigate, Petitioner "must establish a reasonable probability—one sufficient to undermine our confidence in the outcome—that the jury's verdict would have been different if not for counsel's errors," and that "[s]uch a showing may not be based on mere speculation about what the witnesses [the attorney] failed to locate might have said."  See United States v. Tolliver, 800 F.3d 138, n.3 (3d Cir. 2015) (quoting United States v. Gray, 878 F.2d 702, 712 (3d Cir.1989) (internal citations omitted)).

Here, Petitioner provides no affidavits or other evidence to suggest that he was prejudiced by the alleged failure of Trial Counsel to investigate and call character witnesses.  Additionally, as noted by the Government, Trial Counsel called Petitioner's wife as a witness and elicited evidence of Petitioner's character for the jury.  See (Doc. No. 1797 at 17) (citing Doc. No. 1002 at 245, Tr. 5670:13–25); see also (Doc. No. 1002 at 253, Tr. 5678:18–19 (testifying that, e.g., Petitioner "is a good father")).  Petitioner provides no showing that the testimony of character witnesses would have changed the outcome of the trial, offering only speculation that there are several character witnesses that would testify that Petitioner "had a good reputation in the community for being a truthful and law-abiding person," see (Doc. No. 1758 at 4).  Therefore,

Petitioner fails to establish prejudice under <u>Strickland</u> and accordingly, the Court will deny

Petitioner's § 2255 motion as to Ground Two.

### C.    Ground Three: Failure to File a Motion for Severance

The third ground raised in Petitioner's § 2255 motion relates to Trial Counsel's failure to

file a motion for a severance of Petitioner's case from the other Defendants who proceeded to

trial.  (Doc. No. 1758 at 5.)  Petitioner argues that:

> [a]lthough it is clear that a single trial is preferential until Rule 8(b)[,] [Trial]
> Counsel failed to object under Rule 14(a) that the joinder of defendants appears to
> prejudice [Petitioner] and request that the matters be severed.  Evidence at trial
> shows that the alleged acts of the co-defendants was different from the alleged acts
> of [Petitioner].  Indeed, Trial Counsel's trial strategy seems to have been to
> distinguish [Petitioner] from the co-defendant in an attempt to show that
> [Petitioner]'s conduct should not be associated with the conduct of the co-
> defendants.  But such distinction was only necessary because [Petitioner] sat
> through a trial with so many co-defendants.

(<u>Id.</u>)

Challenging this ground for relief, the Government first notes that "[a] severance motion

was litigated by [Petitioner's][C]odefendants which [Petitioner] appears to have joined," citing to

the Court's Memorandum and Order denying the motion.  <u>See</u> (Doc. No. 1797 at 19) (citing Doc.

Nos. 732–33).  The Government continues:

> [Petitioner] has not identified unique aspects of his case that would have justified
> severance from his codefendants.  Their defenses were entirely reconcilable.  In
> fact, they were consistent to the extent that they argued there was no overarching
> conspiracy.  [Petitioner] has not established his counsel was ineffective, especially
> since he appears to have joined the [severance] motion.  Nor does [Petitioner]
> establish prejudice.

(<u>Id.</u> at 20.)  The Government also emphasizes several principles regarding severance, including

the following: (1) there is a "preference in the federal system for joint trials of defendants who

are indicted together"; (2) to warrant a severance a defendant must "articulate [] specific

instances of prejudice" and cannot merely "contend that the very nature of their defenses,

without more, prejudiced them"; (3) "severance should be granted only if there is a serious risk that a joint trial would compromise a specific trial right of a properly joined defendant or prevent the jury from making a reliable judgment about guilt or innocence"; (4) "defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials"; and (5) "acts committed by one [coconspirator] in furtherance of the conspiracy [a]re admissible against the other." (Id. at 19–20) (quoting cases, including Zafiro v. United States, 506 U.S. 534, 540 (1993), and United States v. Hart, 273 F.3d 363, 370 (3d Cir. 2001)).

Upon careful consideration of Petitioner's claim, the parties' briefing, the record, and relevant authority, the Court concludes that Petitioner has failed to establish Strickland prejudice and the Court need not address the first Strickland prong as to Trial Counsel's performance. See Gaines, 33 F.4th at 712 (noting that if a § 2255 movant "makes an inadequate showing as to one of the[] [Strickland prongs], then [courts] do not need to examine the other"). Although the Government misstates that Petitioner joined in a Codefendant's motion to sever,[4] Plaintiff has not presented any evidence that he was prejudiced by his Trial Counsel's conduct. The Court notes that Plaintiff was found not guilty of Count I (RICO Conspiracy) even though Plaintiff was tried jointly with his Codefendants. See (Doc. No. 925 at 1). Therefore, the Court will deny Petitioner's third claim for § 2255 relief.

### D.   Ground Fours and Five: Failure to Properly Advise as to Potential Success of Defense and Sentencing Exposure

Grounds Four and Five raised in Petitioner's § 2255 motion relate to Trial Counsel's advice during plea negotiations. As to Ground Four, Petitioner claims that Trial Counsel

---

[4] The Government asserts that Petitioner joined in a Codefendant's motion to sever because his name was listed in the caption of that motion. (Doc. No. 429.) But Petitioner's name is, in fact, not in the caption of that motion, and Trial Counsel neither formally joined the motion nor filed a brief in support of the motion on Petitioner's behalf. (Id.)

"consistently expressed an unreasonably positive prognosis about his chances of winning at trial." (Doc. No. 1758 at 5.) Petitioner argues that, "[p]rior to trial, [Trial] [C]ounsel was well-aware of the evidence and the witnesses who would testify against [Petitioner]," and Trial Counsel's advice "was perilously insufficient and directly led to the rejection of a more favorable non-trial disposition." (Id.) Petitioner's fifth claim is that Trial Counsel failed to "adequately advise [Petitioner] of his true sentencing exposure which resulted in [Petitioner] rejecting a plea agreement." (Id.) Petitioner maintains that his Trial Counsel gave him "unrealistic expectations of the results of trial and his sentencing exposure," and that he was not advised "of his applicable sentencing guidelines, the important of them and a true worst case scenario by his decision to proceed to trial." (Id.) He claims that had he been "correctly advised of his sentencing exposure, there was a reasonable probability that he would not have proceeded to trial and would have entered a guilty plea which would have resulted in substantially less time than the [s]entence that [Petitioner] received." (Id.) Petitioner claims that he rejected prior plea agreements offered by the Government after discussions with his Trial Counsel. (Id.)

In response, the Government notes that it made plea offers to Petitioner, all of which required Petitioner to enter a guilty plea to RICO Conspiracy with a statutory maximum of 20 years' imprisonment. See (Doc. No. 1797 at 21) (citing Doc Nos. 1798, 1798-1 through 1798-3).[5] The Government argues that Petitioner cannot show he was prejudiced because Petitioner cannot establish a reasonable probability that, but for Trial Counsel's errors, Petitioner would have accepted the plea deal. (Doc. No. 1797 at 22.) The Government also asserts that Petitioner

---

[5] The Government provides August 2015 emails from its counsel to Petitioner's counsel (Doc. Nos. 1798, 1798-2), as well as two proposed plea agreements (Doc. Nos. 1798-1, 1798-3).

has not "demonstrated that his sentence would have been less than the 200 months[']

[imprisonment] he received if he pled guilty."  (Id.)

Because Grounds Four and Five are essentially the same claim, the Court analyzes them

together.  Upon careful consideration of Petitioner's arguments, the parties' briefing, the record,

and relevant authority, the Court concludes that Petitioner has failed to establish ineffective

assistance of counsel as to his fourth and fifth claims.  Petitioner's claims in Grounds Four and

Five fall within the scope of Lafler v. Cooper, 132 S. Ct. 1376 (2012), and as often referred to as

a "Lafler claim."  To establish a Lafler claim and thus establish prejudice under Strickland,

Petitioner must demonstrate that (1) "he would have accepted the plea offer if he had been aware

of his sentencing exposure"; (2) "his guilty plea would have been accepted by the court"; and

(3) "the conviction and sentence he would have received under the plea offer would have been

less severe than those resulting from the trial."  See id. at 1385.

Turning to the dispositive, second Strickland prong under Lafler, the flaw in Petitioner's

claim regarding the plea offer is his mistaken belief that, had he accepted the offer and pleaded

guilty to Count I (RICO), his guideline range would have been far lower than the 20-year

statutory maximum attached to the offer.  Although the offer's statutory maximum was twenty

(20) years, Petitioner cannot establish that the sentence the Court would have imposed had he

accepted the plea would have been less than the sentence Petitioner ultimately received upon

conviction after trial.  A review of other Codefendants' acceptance of pleas provides insight into

what sentence Petitioner may have received if he had accepted the Government's offer.  Nine

Codefendants accepted a plea offer to the RICO count, and all of them were assessed with a base

offense level of 43 as a result of underlying racketeering activity ascribed to them.[6]  Counsel for most of the Codefendants objected to the underlying racketeering activity, and the Court overruled those objections.  The only two Codefendants to receive a lower base offense level presented circumstances—which may have applied similarly to Petitioner due to his smaller role—and all but one Codefendant (who had a guideline range of 210–240) faced guideline ranges of 240 months.  Having presided over these proceedings since their inception, the Court is certain that Petitioner would not, had he pleaded guilty to the RICO count, faced a guideline range well below every Codefendant who pleaded guilty to the same charge.

Further, at sentencing, the PSR calculated Petitioner's total offense level as 36 with a criminal history category of V.  (PSR ¶ 254.)  The statutory minimum of imprisonment was ten (10) years and the maximum term was life on each drug count (Counts 2 and 3).  (PSR § 253.)  Based on this, the guideline range was 292 months to 365 months.  (PSR ¶ 254.)  Trial Counsel requested a downward departure/variance from the guideline range based on Petitioner's time

---

[6]  The PSRs of every Codefendant who pleaded guilty indicated base offense levels of 43 based on underlying racketeering activity.  (Doc. Nos. 1106 ¶¶ 209, 218, 296 (Hall); 1110 ¶¶ 210, 219, 294 (Sturdivant); 1116 ¶¶ 210, 220, 303 (Rogers); 1141 ¶¶ 210, 262, 298 (Nolden); 1155 ¶¶ 209, 261, 311 (Williams, Jabree); 1165 ¶¶ 207, 218, 317 (Brown); 1170 ¶¶ 213, 223, 282 (Abney, James); 1192 ¶¶ 208, 218, 306 (Abney, Jahkeem); 1196 ¶¶ 208, 217, 305 (Payton).  Counsel for seven of these Codefendants raised specific objections to the underlying racketeering activity.  (Doc. Nos. 1238 at 2 (Brown); 1254 at 3–4 (Nolden); 1262 at 4–6 (Williams, Marquis); 1281 at 3–6 (Abney, James); 1302 at 2–6 (Payton); 1544 at 3–5 (Abney, Jahkeem); 1581 at 3 n.1 (Hall).)  As to all but two of these Codefendants, the Court adopted the PSRs over counsel's objections and applied base offense levels of 43.  (Doc. Nos. 1385 at 1 (Nolden); 1543 at 1 (Abney, James); 1555 at 1 (Abney, Jahkeem); 1556 at 1 (Williams, Marquis); 1576 at 1 (Payton); 1586 at 1 (Hall).)  As to Codefendant Sturdivant, a juvenile offender with a mitigating role in the crimes, the Court applied a base offense level of 33.  (Doc. No. 1561 at 1.)  As to Codefendant Brown, the Court applied a base offense level of 34 based on the Government's concession that Brown was involved in the offenses for a more limited period.  (Doc. Nos. 1491 at 1.)  As indicated above, both Sturdivant's and Brown's guideline ranges (210–240 and 240, respectively) were much higher than the guideline range Petitioner argues he would have faced upon pleading guilty to the same charge.

served, lack of violent offenses, and his turn away from criminal conduct. (Doc. No. 1396 at 12–18, 26–27, Tr. 12:13–18:25, 26:19–27:15.) The Government objected, arguing that "a sentence at or near the top of that guideline range appropriately accounting in a departure from that depending on the time credit the Court will determine would result in a sentence in what would appear to be in the mid to upper 20 years range." (Id. at 43, Tr. 43:17–21.) The Court ultimately sentenced Petitioner to 200 months' imprisonment based on Trial Counsel's motion for a variance as well as other factors, including Petitioner's role in the offense and his history and characteristics. (Doc. Nos. 1362 at 1–2; 1365 at 1–3; 1396 at 53–55, Tr. 53:21–55:14.)

In short, Petitioner's assertion that his sentence upon a plea of guilty to Count I would have been lower than 240 months (twenty years) or the 200 months he ultimately received is misplaced, and fails to satisfy the third prong of Lafler. Further, and his claim that Trial Counsel should have informed him of a lower guideline range, upon which he would have accepted the plea offer, is unsupported. Accordingly, Petitioner has failed to satisfy the third Lafler prong, i.e., that the conviction and sentence he would have received under the plea offer would have been less severe than those resulting from the trial. As noted above, Petitioner's failure to satisfy Lafler means that he fails to establish prejudice under Strickland. See Lafler, 132 S. Ct. at 1385. The Court will therefore deny Petitioner's § 2255 motion as to Grounds Four and Five.

### D.    Ground Six: Failure to Correct the Calculation of Time Served

Petitioner claims that his Trial Counsel requested a downward departure due to the "number of years [Petitioner] spent incarcerated while awaiting his trial." (Doc. No. 1758 at 6.) However, Petitioner contends that his Trial Counsel "only utilized a [Government] trial exhibit and did no investigation to determine the actual time credit to request." (Id.) He argues that

"[s]uch an important investigation should have been supported with documentation," and that Trial Counsel's "failure to properly prepare for this issue at sentencing constitutes prejudicially deficient performance requiring the vacation of the sentence imposed." (Id.)

In response, the Government contends that it is unclear "which aspect of [T]rial [C]ounsel's advocacy he contests." (Doc. No. 1797 at 22–23.) The Government maintains that Trial Counsel advocated for a downward departure during sentencing and the Court granted a reduction of forty (40) months. (Id. at 23.) The Government argues that the exclusive remedy for challenging the calculation of a federal sentence is a habeas corpus petition filed pursuant to 28 U.S.C. § 2241 because the exclusive authority to calculate credit for time served rests with the Attorney General through the Bureau of Prisons. See (id. at 23–24) (citing Galloway v. Warden of FCI Ft. Dix, 385 F. App'x 59, 62 (3d Cir. 2010) (unpublished) and United States v. Allen, 124 F. App'x 719, 721 (3d Cir. 2005) (unpublished)).

Upon careful consideration of Petitioner's arguments, the parties' briefing, the record, and relevant authority, the Court concludes that Petitioner has failed to establish ineffective assistance of counsel as to his sixth claim based on the second Strickland prong. The Court need not address the first prong of Strickland. See Gaines, 33 F.4th at 712 (noting that if a § 2255 movant "makes an inadequate showing as to one of the[] [Strickland prongs], then [courts] do not need to examine the other"). The Court agrees with the Government that it is unclear which aspect of Petitioner's Trial Counsel's advocacy that Petitioner contests. A review of the transcript of Petitioner's sentencing reveals that Trial Counsel sought a downward departure because he was "arrested in 2014 and, . . . had to stand trial and has been incarcerated since that time," and "requested six and a half years credit for a departure motion for the prior periods of incarceration for relevant conduct." (Doc. No. 1396 at 19, Tr. 19:1–20:22.) After hearing from

20

the Government, the probation officer, Petitioner's mother, Petitioner's wife, and Petitioner on this issue, see generally (id. at 20–55), the Court, finding Trial Counsel's argument and presentation persuasive, granted a reduction of forty (40) months based on Petitioner's time served, (id. at 55, Tr. 55:1–22).  The Court notes that it granted this reduction over the Government's objection.  See generally (id.).  Therefore, Petitioner cannot establish prejudice as to the calculation of time served because he benefited from this reduction at sentencing.  Accordingly, the Court will deny Petitioner's sixth claim for § 2255 relief.[7]

### E.    Evidentiary Hearing

Section 2255(b) advises that a petitioner may be entitled to a hearing on his motion.  The decision to hold a hearing is wholly within the discretion of the district court.  See Gov't of V.I. v. Forte, 865 F.2d 59, 62 (3d Cir. 1989).  If "the files and records of the case conclusively show that the prisoner is entitled to no relief," the Court need not hold a hearing.  See 28 U.S.C. § 2255(b).  In determining whether a hearing must be held regarding claims of ineffective assistance of counsel, the Court must first "accept as true the nonfrivolous allegations in the petition" and then "determine whether, on the existing record, those claims that are nonfrivolous conclusively fail to show ineffective assistance of counsel."  See United States v. Dawson, 857 F.2d 923, 927–28 (3d Cir. 1988); see also United States v. Arrington, 13 F.4th 331, 334 (3d Cir. 2021) (applying the standard as set forth in Dawson).  Here, assuming the truth of Petitioner's nonfrivolous allegations but not of the conclusory and speculative ones, the Court finds that he has conclusively failed to establish ineffective assistance of counsel as to any of his grounds for

---

[7]  The Court agrees with the Government that if Petitioner is disputing the calculation of his sentence, his claim should be made pursuant to 28 U.S.C. § 2241 and against the warden of his facility.  See Barden v. Keohane, 921 F.2d 476, 478 (3d Cir. 1990) (stating that a "petition is actionable under § 2241 because [the petitioner] is in custody and [the petitioner] attacks the term of that custody").

relief.  Accordingly, the Court finds no reason to hold an evidentiary hearing in this matter.

      **F.**    **Certificate of Appealability**

In proceedings brought under § 2255, a petitioner cannot appeal to the circuit court unless a certificate of appealability ("COA") has been issued.  A court may not issue a COA unless "the applicant has made a substantial showing of the denial of a constitutional right."  <u>See</u> 28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  <u>Miller-El v. Cockrell</u>, 537 U.S. 322 (2003).  Here, the Court concludes that jurists of reason would not find the disposition of this case debatable, and the Court will not issue a COA.

**IV.**    **CONCLUSION**

For the foregoing reasons, the Court will deny Petitioner's § 2255 motion (Doc. No. 1758) without an evidentiary hearing and not issue a COA.  An appropriate Order follows.

                                 s/ Yvette Kane
                                Yvette Kane, District Judge
                                United States District Court
                                Middle District of Pennsylvania